The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good afternoon. Welcome to our brownie or to our chambers to Richard Chambers courthouse here in lovely Pasadena. This is the time set for the case of Henry Kevin Harry Gilman debtor Tammy Phillips and Tammy Phillips APLC versus Amy Goldman. Are the parties ready to proceed? All right. Let me just check. Judge Gould, can you hear me? Yes, I can hear you. Okay. Thank you. Then we're ready to proceed. You may come forward. Good afternoon, Your Honors. My name is Charles Jacob. I represent the appellant, Tammy Phillips and the Tammy Phillips Professional Law Corporation. Counsel, I'm having trouble hearing you right off the bat, so that's okay. If you could speak up, that'd be great. I'd ask for 15 minutes just to make a presentation reserved 15 minutes for rebuttal. I am Charles Jacob, the attorney for the appellants. I wanted just to touch on a few things here. I mean, the briefs are really detailed. Obviously, we got a rough treatment from the bankruptcy court. And like the district court, we have a situation where the judges seems to be conflating the ideas of immunity and standard of care and gross negligence and linking those two. When this court itself and Castillo, I think at the closing part of that opinion, basically expressed that once you've got immunity, this whole idea of gross negligence or negligence, simple negligence, whatever, is all irrelevant. I mean, the case is done at that point. So I think you've already attacked and destroyed part of what is said in that Continental Coin case. Obviously, the relief we're seeking here is to get this case reversed as to the immunity defense, to get remanded back to a different court in the same central district of California of a different division, and remanded with some sort of instruction that there is no gross negligence requirement. As the district court concluded, we brought a state law claim for breach of fiduciary duty, and that is not an element of that claim. What I think what is happening on is there's a bit of confusion by people influenced by this bankruptcy review commission having a proposal to impose a gross negligence standard, and it gets somehow bound up into the idea of an exception to immunity when these are two different things. Immunities are defenses, but the standard of care is an element of a prima facie case of the breach of fiduciary duty. Well, in fairness, they may be confused by our case law, which I find confusing. Are you drawing a distinction between the type of immunity afforded to a trustee who affirmatively seeks court permission before the fact as opposed to one who seeks it after the fact? Do you draw that distinction? I think that's an important issue in some sense, if I understand you correctly. We do have heavy reliance. We've cited the McKenzie case from the Sixth Circuit as explaining these things and why we have decisions like the Hammond case or the case where basically the Harris case is a long stream of cases saying get your comfort order. That's my terminology. It's common cause. It's common existence. And probate cases, they call it petition for instructions. I'm just trying to get at a simple question, but I might not have asked it very well. But if a trustee affirmatively seeks permission and then acts pursuant to a court order, is it your view that that trustee is entitled to what I think you're calling absolute immunity? That's the terminology might change. I've heard it called derived judicial immunity. It's just a yes or no. So before you go into the intricacies, I'm just asking, would you agree that someone, a trustee, who acts pursuant to a court order directing or allowing a particular action is entitled to immunity? Yes, with one exception or two exceptions. It has to be a candid disclosure full and frank to the court and so forth. So that is sort of it makes the court, that person, an arm of the court basically. So that's not an issue here. Well, counsel, would it make a difference if the approval were obtained before or after the action? I think that's something you're getting. Yes, it would. Okay. What difference would it make? Well, in the sense of getting a decision affirmed, the argument was made by the opposing counsel that everything is a nunk-pro-tunk once something is abandoned. And we're talking about two different situations. Well, I don't think it doesn't have to be property abandonment. Judge Rollinson's question is more general than that. Okay. I'd like to buy a vowel. Can I get another?  So my question was, does it make a difference whether the trustee sought approval before the action was taken or after the action was taken? I suppose in some cases there might be an argument for ratification. But I generally think you should get it beforehand. That's what creates the immunity. So, counsel, in your view, can the test from Castillo and the test from Harris coexist? They're fundamentally different cases. And this is why I cite what I wanted to start off by saying is you have to step back and look at the bankruptcy code. It's created on a model of probate in which we have people called trustees who have fiduciary duties. And why do we have fiduciary duties? The purpose is to assure that the trustee is not sloppy or disloyal. And the way you do that is Congress's enforcement mechanism. Because beneficiaries are vulnerable to misconduct by trustees. And the cost of monitoring trustees is very expensive. Counsel, what's your answer to the question whether Harris and Castillo can coexist? Yes or no? Yes, because Harris and those line of cases are dealing, I think, with situations where you have a fiduciary duty, a first-party claim. Whereas I think that when you have a first-party case, as Mackenzie is saying, that's when you need these orders, these comfort orders. Well, maybe another way to slice it is that that line of cases that you're talking about, sometimes they're referred to as comfort orders, sometimes they're referred to as derivative immunity. But those are cases, to go back to what Judge Wallinson was asking about, where a trustee is asked in advance for permission and is acting pursuant to a court order. And it's hard for me to imagine a trustee doing that and not being entitled to immunity. It's not a trick question. It just seems to me to be that's the easy case. And I have a hard time hearing you say yes to even that premise. I agree, but the next step might be an argument that the trustee obtained an order, and she never did. Okay, no, no, no. Okay, I'm with you. Again, not a trick question. That's just that premise, that hypothetical. I'm not talking about your case. And then take it to the next step, if you would, to just help us tease out your view of this law. If a trustee does not act pursuant to a court order, does not seek advance permission, but after the fact seeks immunity, that seems to be more of a castillo circumstance. And then I think you have a question about the scope of immunity that might be afforded. Do you agree with that? I really can't answer off the top of my head. I'll have to move on. Let me ask you that. What test would you apply here, castillo or Harris? Harris, because castillo is a third party. There's no fiduciary duty owed in that castillo situation. Harris, did your client get approval from the bankruptcy court for whatever action? My client is a beneficiary, not a trustee. Oh, I'm sorry. I want to go back to what you just said, that castillo doesn't apply here. And I guess I don't understand what your understanding of castillo is based on that answer. So... Well, the castillo case was a third party. I mean, the trustee, this is a breach of fiduciary duty case. It's a first party case. It's not a third party who's not owed, a non-beneficiary, someone who's not owed fiduciary duties is not the complainant. My clients are beneficiaries and should be respected through fiduciary duties. And that's why we have a complaint for breach of fiduciary duty. I don't think that... Do you read castillo as only applying to the third party situation? Well, there are a lot of people who say that this is a great mix up. And the McKenzie case is like that. They say that you need this. There are different... I understand that, but... For... Okay, so I'm coming back to the question. I read castillo as trying to apply the Supreme Court's decision in Antoine for what does judicial immunity mean as applied to a bankruptcy trustee and taking those more general principles that the Supreme Court discussed outside the bankruptcy context and putting it in this context. That's how I read castillo. I don't see anything in the castillo decision that would tell me that the reasoning there applies based on whether we have a third party claim or we have a beneficiary claim. What in that case tells you that that makes a difference? Well, it might go back to Antoine because Antoine was, in general, not looking at any case with fiduciary duties. As one commentator said, his name was Bogart, the real problem here is that almost all of these quasi-judicial immunity cases involve people who do not owe fiduciaries. Like, they're acting as judges. You don't owe fiduciary duties to me. You can make mistakes and so forth. But trustees are different. I'm sorry to jump in, but your point is then if you have a claim involving parties where there is a fiduciary relationship, that judicial immunity can't apply. Is that your point, just sort of a more general principle? No, you can get the judicial immunity through that comfort order. But that's the only way. I believe so. The reason you're saying that, just to make sure I understand, is that you think that when somebody is alleging a breach of fiduciary duty, what the trustee is doing is just not adjudicatory under castillo. That the trustee is operating in a business or administrative capacity, and that's why you can do this. Well, and if the plaintiff is not a beneficiary, that's the distinction I've made. Maybe I could get to something that you're talking about in the immunity area. The Castillo cases and the cases that are following it, or yes, following it, they're looking for adjudicatory acts. And the Charles Tabb, I think the Castillo case cites both the Cooley Treatise on Torts and Charles Tabb's discussion of the development of bankruptcy law. And it closes with some sort of warning, we're dealing with a certain type of action on calendaring something. But it's not going to necessarily apply in other cases, because you have to look at a functional analysis, and what is the function of the trustee at issue, and what is the implication of granting immunity. And it's a bit different when you're dealing with the preservation of property, because this is a fiduciary duty, and it's expressly out there. Because Cooley was cited there, please take note that I think Cooley decided or stated in his treatise, section 396, that judicial action basically implies not merely a question, but a question referred for solution to a particular officer involved, a non-judicial officer. And that person is going to have the discretion and have to live with it, right or wrong. But that person has authority. And in this case, in the issue of abandonment of property, the statute, section 554 in the Reed case, that doesn't go to the trustee, that's a decision made by the judge. And they're the ones who make the call. I guess maybe to ask it a different way, is it possible for a trustee to do anything adjudicative in relation to someone where there might be a fiduciary duty owed to them? Is it possible for those two things to exist together? I don't know on the facts. I don't see it on the facts here. We're too far away. I'm not asking about the facts here. I'm just trying to figure out how these doctrines, what they mean and what their boundaries are and how they relate to each other. And so I'm trying to get at if your argument might make sense if your position is that when you are, when a trustee is interacting with somebody that has a fiduciary obligation to it, just categorically can't be doing anything adjudicative. If that's your argument, then maybe I would understand the position. I'm not sure I understand that to be the case in terms of is it true that everything that a trustee does in relation to creditors categorically is nonadjudicative? No. I think there is. I can't say that. It's partially because of my background.  If you can't say that, then how can Castillo be completely off the table if a trustee is interacting with people, the creditors that it owes fiduciary obligations to? Well, even if you want to bring in Castillo and say that's part of it, you're still dealing with the fact that under Charles Tabb and so forth, he does the Castillo analysis. They said trustees have multiple functions and preservation of property is not one of them. Excuse me. Have different functions and preservation of property and collection is one of these administrative ministerial functions. I mean, I get that you're trying to say that preservation of property, that the sort of management of a bankruptcy estate is outside of whatever immunity is being discussed in Antoine and Castillo. Fair? I'm drawing a blank on it. So if I could just move on. Well, I'm not going to let you go just yet. I'm trying to figure out. I think you said a minute ago that Castillo can't apply here at all because we have a trustee that's interacting with creditors and there are some fiduciary obligations that may or may not exist there. And so Castillo is off the table because you can't have immunity for fiduciary obligations. And I'm trying to get at is it possible that you could have adjudicatory functions even in relation to creditors where a fiduciary obligation might extend but nonetheless trigger the principles being discussed in Antoine and Castillo? And so we have to do that analysis. And maybe you're correct that all the trustee is doing in terms of marshalling and managing the bankruptcy estate is going to fall outside of adjudicatory functions, which Antoine and Castillo are talking about. But that doesn't mean that Antoine and Castillo just categorically don't apply in this context. So are you saying that if someone didn't get that comfort order, they could nevertheless be eligible in a fiduciary situation under Castillo? I'm asking you. Why isn't that true? I just don't see it. And I don't see that Antoine was directing the Castillo court to address this situation of fiduciary situations. Again, the difference here noted by the literature seems to be that the distinction between first and third party cases in terms of how you do an analysis and the immunity situation under those sort of comfort order cases will give you the derivative immunity. And I don't think Antoine speaks to that issue. The problem is that these are contrary antagonistic forces. Congress's mechanism is breach of fiduciary duties to ensure good results. And as soon as you start throwing immunity casually, you're undermining the legislative intent, it would seem. Can I take you back to the standard of care issue? Yes. So you're arguing that it should just be negligence, but the district court and bankruptcy court held you to a higher standard of gross negligence. Why do you think that the standard should be negligence as opposed to gross negligence? Cases like Mossler say this is the best thing for good administration. It's also the root of the law that was Congress used as a model in trust law. The restatement second had that law, a simple negligence standard. And what is more, the United States Supreme Court in the Willoughby case uses that standard expressly and refers to, I think it's referring to trust law cases. Under your case, Leite, L-E-I-T-E, basically unless Congress has come out and said something different, even though the Willoughby case was a case under the 1898 Bankruptcy Act, you don't presume that Congress meant a change. On top of that, you've got this wonderful observation that the commission wanted to change the standard, but Congress didn't adopt it. And, of course, you can talk about sounds of silence. What do we infer? But we know that Congress did adopt some of those changes and put them in BAP-CEPA. I know of one limitations on homestead exemptions and so forth. So this is something that clearly Congress as a body rejected, I guess. There's this continental coin case from the bankruptcy court in the central district seems to have been influential, at least in this district, in guiding what people might think the standard of care should be. One of the points that the judge makes in that case is that if we just have a negligence standard, the bankruptcy system will grind to a halt because we'll just have negligence suits and we need greater protection for trustees so that trustees are more willing to take on this responsibility. How do you address that? First, I think it's all, at least in the case of what we have in front of us here with abandonment of property, the statute actually, Section 554, essentially makes the trustee apply for that comfort order. The continental coin case says, well, we're going to have a lot of comfort orders. That's going to overwhelm us. And that's easily resolved through the fact that you can have a streamlined application. So if a trustee gives notice of intent to abandon and nobody complains, that's it. You have consent or an estoppel so that there is no longer issue of a liability issue for that trustee. Mr. Jacob, I wanted to go all the way back to the beginning in the jurisdiction. I want to make sure I understand your jurisdictional position correctly because, at first glance, this looks a lot like the sort of thing that we would need a certification to decide. It's a purely legal issue that's divided the circuit. That's what was at issue in Bullard. So do I understand correctly that your view is that by holding that the trustee had quasi-judicial immunity, which I think you'd said kind of doesn't admit of flavors of standards of liability, it's just the end of the case. Proceeding to remand for a determination of whether there was a showing of gross negligence was itself futile because if the trustee has quasi-judicial immunity, your position is that's just the end of it. That's an absolute immunity within its proper scope. That would make it a final order? Was that a yes? That is a yes. They killed our position. Are you agreeing with the premise in Judge Johnstone's question? If there's quasi-immunity, then it's absolute. Well, there's nothing left to do, right? I just want to make sure. I think that is yes because I think that's what Castillo says. I just needed a yes or no. I'm interrupting his question, but I just wanted to make sure that your nod of the head was you agree with that premise. Yes. Okay. Because if there were remand, it would look more like the Guglielmo case or others. It wouldn't quite be final, and so it does take the fact that it was the final adjudication. There wasn't really much more, even though the district court thought that there might be more for the bankruptcy court to do on remand. Your position is once it was recognized as immunity, that was final for purposes of 158D1. Is that right? Right. I think the way you put it is that this is a meaningless remand because the bankruptcy court is going to be obligated to follow what the higher court said, and the higher court said she's got immunity. So that's us out of court. We're at both levels. It's final. No factual development you think you could do with respect to the standard? Well, I mean, if we were told that if we had to show gross negligence, we think we did. But if we didn't and someone can show that, we would be able to file a revised complaint and basically focusing on the schooler case. Am I correct in assuming that you're standing on the complaint? Oh, we think it's fine. I mean, the issue is that this— So you're standing on the complaint that you have right now in the record. We say that the trustee in that complaint shows gross negligence. This is a trustee. She's alleged to have gotten notice in ample time, and she did nothing. So that's a yes. There's no attempt to replete additional allegations. Well, there might be other things that can be added in there because there are a lot of facts over time with this trustee. But then how would we have jurisdiction under 158D1 if you're going to go back? Doesn't that bring it squarely under Guglielmo? Because I thought, given the way that you briefed this case and the jurisdictional issue, that you were prepared to stand on the complaint rather than follow up on the remand to attempt to add additional allegations. I thought that was your position, the way that you had briefed this issue. But you're saying that that may not be the case? Well, I don't know. If we're sent back, prospect of being sent back to argue about gross negligence, I don't see what we'll— No, I'm asking your position. I think it's going up to the Supreme Court or going down because the Willoughby case seems to be controlling. This is the development of— I'm not sure I understand your answer. Are you saying that because you think that it's futile anyway, you're not going to attempt to amend and you'll stand on the current complaint? Because just a moment ago, in response to Judge Johnstone's questions, you said there might be additional allegations that may be pled. I'm just not sure where you stand on that issue. I thought it would be a strategic decision-making as to how much we're going to fight and where we would do it. I think that even if you can amend and satisfy some people about gross negligence, you could go up to a court and say that this is improper development of federal common law. Congress created rules in a bankruptcy code which largely regen state law, and now these decisions are involving people making federal common law as to what's necessary for a breach of fiduciary duty against a bankruptcy trustee. If you're telling us that you're going to go back and amend the complaint, that matters. It—  Okay. Well, I— —to determine whether amendment would be futile, right? So if you basically are telling this panel that you're going to stand on the current complaint, I think that that moves you a fair ways towards finality, and that means that we can take jurors— possibly means that we can hear at this moment in time. But if you're saying, well, there are additional allegations, and I want the opportunity to argue before the bankruptcy court to amend the complaint and have that question of futility be determined before the bankruptcy court pursuant to the remand from the district court, then there may be a jurisdictional problem. That's why I'm asking you these questions. Okay. Well, I think the term futility was in two reasons. Futile to try to get a judge to change the position she already took in the bankruptcy court because she already said it was futile, and she dismissed without giving a leave to amend. And the district court should have taken on review and said she did something wrong, but she didn't. And so given our view of what immunity is, if she has immunity, the whole thing is pointless because there is no negligence. But I still don't hear you really answering Judge Wynn's question. Is it your intent, or was it your—I understood. Let me just say, I understood that you sidestepped or I should say declined the opportunity to try to amend on remand and instead decided to appeal. You had that opportunity, and I heard your—what I read in this sequence is that your client did not take that opportunity, did not want to amend. Is that right? Well, did not want to amend because we did not think it was a needed amendment. Okay, so the answer to Judge Wynn's question—and these are not trick questions, but now I'm concerned that I misunderstood your intent. My understanding is that your answer to Judge Wynn's question is that your client does not intend to amend. That decision hasn't been made yet, but it's something that I— What are we doing here? Barbara, we have jurisdiction. We're going to need an answer from you because we're trying to figure out whether it's an interlocutory order or not. And so if there's possible amendment of the pleadings, that means that the party's legal rights and positions haven't been fixed, and we may not have jurisdiction. But if you're going to rest on the current complaint, then that means there's not a whole lot left to be done, and we can take jurisdiction. I guess I should say that I don't see how amendment would do anything, given what immunity is, and that immunity is absolute. So I don't see the difference. So your view is that after the ruling by Judge Fitzgerald, the case was over unless you appealed to us? At that level, yeah. So then you think the case is over unless you appeal to us? Yes, and it's also because there is no—if you're immune, what's the point? Gross negligence or whatever? No, I understand that that's the reasoning behind your decision. I think what we're all trying to assess here is should we even be doing this right now? And the only way we can do this is if we're appealing a final order. So you have to convince us that we actually are reviewing a final order. Are we reviewing a final order from your perspective? We look at a number of things, the various theories out there, and we say this is—what they've done is they've fixed our rights. I'm apologizing for cutting you off, but I think anything short of a yes for you is a problem. Okay. So are we reviewing a final order? That is my view, yes. Okay. And now I'll ask why are we reviewing a final order? Why do you think it's final? I think you said because in light of Judge Fitzgerald's ruling, there's nothing more you can do. The practical aspect of the bankruptcy judge having to follow the orders of the district court and also because of what the Castillo court has basically indicated and others, that it's an absolute—once you have the immunity, it doesn't matter what the state of mind is. So there's nowhere to go. So that's another way of saying, getting back to Judge Wynn's question, that you're standing on your complaint because you think the district court was wrong, you're not trying to amend, you don't intend to amend, and you wanted to appeal instead because you think that was the end of the road. Yeah. Do you want to reserve that one last minute? Yes. All right. Thank you. Thank you. Good afternoon, Your Honors. Lon McIntyre appearing on behalf of Amy Goldman, who is the Chapter 7 trustee in this matter. It is our position that Harris and Castillo can coexist in this legal analysis that I'd like to lay out for you. We contend that where a bankruptcy trustee has engaged in discretionary decision-making activity without a court order, immunity applies to preclude personal liability unless the trustee was grossly negligent. There are situations in which bankruptcy trustees exercise discretionary judgment and make discretionary decisions that adjudicate personal rights that do not require a court order. There are other situations that do require a court order. Whether a court order is required or not, a trustee can always seek that permission, it seems to me. I don't know anything that would prevent a trustee from seeking permission. And for those trustees that are acting pursuant to a court order, that seems to me to be an easy case. Okay? And so what happens when a trustee – in other words, easy meaning I think that person – I'm a vote of 1 out of 11. That person seems to me to be clearly entitled to immunity. But what about the person who doesn't act pursuant to a court order? What's the test? And what is the scope of the immunity under your view? The test for a situation as we have here where the bankruptcy trustee did not seek a court order in making her determination that this is a no-asset case and that – which involves a discretionary judgment about whether or not seeking to recover certain assets or to engage with property of the estate makes sense given the cost of doing that and the value or the benefit to the creditors and beneficiaries of the estate. And that's the kind of decision that leads to what happened here, which was a request for a report of non-distribution. So in cases where there is a – no court order has been obtained and the trustee has engaged in an adjudicatory or discretionary judgment, we contend that there is an appropriate basis for carving out gross negligence cases but continuing to give immunity for negligence cases because in the situation involving a bankruptcy trustee, there is an overlay of fiduciary duty that doesn't exist in actual judicial immunity. In judicial immunity cases, the judge is absolutely immune, and we agree with that proposition. There's no question about that. But you're talking about giving – you're talking about discretionary decisions that are business decisions, not adjudicatory decisions. Is that correct? No, I think they're adjudicatory in the sense that those decisions lead to the filing of a report of no distribution. Sure, but these are decisions about whether the asset has any value, whether there's any practical value in going and managing the property, collecting the rent, rehabilitating the property, doing whatever it is. Those are all business decisions. That's not a classic adjudicatory decision. These are good business decisions that have to be made by all kinds of ordinary people outside of the judicial system every day. Why would we classify those as adjudicatory decisions? Just because they've been made by a trustee. I think it's because those decisions result in the adjudication of the rights of the creditors and the debtor to property of the estate. That's the ultimate decision that you end up having as a result of the trustee engaging in those activities that Your Honor is considering. If that's right, what aspects of a trustee's work would not be adjudicatory? Because it seems like we're describing basically everything that a trustee does. Well, I think more administrative activities would be things like filing certain reports. In Section 704 of Title 11, it talks about the various duties of a trustee, and you can see that some of them are clearly administrative and some require the exercise of discretion and are adjudicatory because they determine the rights of the parties. Counsel, how do you square this theory with a case such as Mosser v. Darrow? The court there just said ordinary negligence principles apply to the receiver there. Well, I think that Mosser has been more broadly read than is justified, but Mosser said that really was talking about action that it characterized as willful and deliberate, that this trustee willfully and deliberately allowed an interest adverse to the trust. So your contention is that it really is talking about gross negligence? Yes, at least either gross negligence or perhaps intentional conduct that is even beyond gross negligence. But in Mosser, the court did not address negligence at all in the sense that the facts of its case and the language that it used was based upon willful and deliberate conduct, and I think that you have to narrow the holding of that case, or the holding of that case is narrower than has been treated in some subsequent cases, and it should be limited to the facts and to the language that the court was using in that case. Well, what about just like a case like our case, Cochise from 1983, where we said a trustee is subject to personal liability not only for intentional but also negligent violations of duties imposed upon him by law? Why wouldn't that impose liability for negligence? I think that that is, again, that conclusion, in making that conclusion, the court cited Mosser or Moser. And again, I think the court made the mistake of overly broadly interpreting what Mosser stands for, and I don't believe that Mosser stands for that proposition that mere negligence is not subject to immunity. Counsel, let me ask you this. In Castillo, I think the court was trying to distinguish between activities that the trustee engaged in such as, activities such as collecting, liquidating, and distributing the debtor's property to creditors, and it was contrasting or comparing that with more traditional judicial activities, I'm reading verbatim here, such as seizing property, summoning persons to appear before them, and committing people to prison. So the allegations here, as I understand it, is negligence and failing to preserve assets, essentially for inaction taken in collecting the debtor's property. That sounds to me much more like the activities such as collecting, liquidating, and distributing debtor's property as compared to what Castillo described as judicial activities. How do you respond to that? Your Honor, I think that the test that Castillo applied identified as a key feature of adjudicatory versus administrative whether substantial discretion is involved. Sure, there's an element of discretion. I don't think that answers it. I think what Castillo was talking about following Antoine's teachings is to really look at the function, right? So that's why he was talking in that context about the common law duties that are trustee-like as opposed to more traditional judicial activities. And quasi-immunity applies to one category but not the other. So it doesn't seem to be the distinction between negligence versus gross negligence. It's really looking at the function. And to me, the allegations here fall very much – it seems to fall very much in line with the activities described in Castillo as being trustee-like activities such as collecting, liquidating, and distributing the debtor's property to creditors. I understand. And it's our position that Castillo also says that you have to look at the – and focus on the ultimate act rather than the constituent parts of the act. And here it's our contention that the ultimate act that is being complained of is that this report of non-distribution or no distribution was filed that ultimately cuts off creditors' rights and cuts off claims and allows property to be re-returned to the debtor. Does it do that by operation of law in and of itself, or does it need court intervention? Most Chapter – I'm sorry. Most Chapter 7 cases are resolved with a filing of a report of no distribution followed soon thereafter by case closure, and an order of the court is not required to accomplish – It wasn't a closure here, right? There never has been, right? To answer Judge Forrest's question. Yeah, so I'm just trying to get at that would make sense if the trustee files the report and then the rights are set. Everybody's rights are set. It's a little different if the trustee files that report and then a court approves it or tinkers with it or whatever, right? So which – and you're saying that in the Chapter 7 context that the trustee files that report, and in and of itself it sets everybody's rights. That can be the case, yes, unless there's an objection. Wait a minute. Can be? Like when is it not? When there's an objection, timely objection made, and then it goes to a hearing before the court. But most of the Chapter 7 cases are not resolved that way, and it is a possibility to resolve them and ultimately close the case without a court order. So again, we're in a circumstance where there's never been an adjudication – there's never been closure of the case because of extensive litigation and multiple appeals to this court that intervened over the last decade essentially. I mean, there's an argument to be said that if the trustee files a report and there is no objection or no dispute that we're not really adjudicating. It's sort of resolution by consent in some sense, right? Because you had the ability to say, no, I don't like this. This is not protecting my rights or whatever, and nobody said anything, and therefore it just goes through as approved. That's not really an adjudication. I still think it is an adjudication because it does end up ultimately setting the party's rights, whether it's with a court order or without. Even without closure? Well, not without case closure. Right, and so that seems to be an important point that you're leaving out. I mean, I appreciate that there wasn't an objection, but then there wasn't closure. If there had been closure, that would be one thing, but what do we do? Well, I think for purposes of my question, closure doesn't matter. It's just like how you got there, and if you got there based on not having to resolve a fight, a conflict between people with opposing interests, is that really adjudication in the sense of how we talk about that with judicial immunity, or is that just it got resolved? I think it still constitutes an adjudication, maybe of a different flavor, but it certainly constitutes an adjudication because the ultimate act is case closure, which ultimately determines everybody's rights. I mean, the report of no distribution without objection is a final determination and adjudication of party's rights. Ms. McIntyre, I guess I have a question about the district court's order here. I mean, is it your position that the district court found that the trustee was entitled to quasi-judicial immunity? The district court that the trustee was entitled to?  Okay. Because gross negligence had not been adequately alleged. Well, so that's where I'm confused. We say in Castillo several times, and I think it's generally what we take quasi-judicial immunity to be about, is that it's absolute. But the district court here, and it sounds like your position is, is that first there's a determinant of quasi-judicial immunity, but it's not absolute. It then leads to a gross negligence provision, which really isn't immunity at all. I'm trying to figure out, aren't we conflating those two ideas? I mean, the first question is quasi-judicial immunity, as far as the cases that I've reviewed from our court and the Supreme Court, is it's kind of an on-off switch. I mean, once it's found, it's found. Now, the question about the scope of quasi-judicial immunity, right, it may be that other cases in quasi-judicial immunity outside of the bankruptcy context, if a judge is or someone cloaked with quasi-judicial immunity is willfully exceeding their jurisdiction, you're just not immune. But that goes to the immunity inquiry. Why would, I guess, can you explain to me how the standard of liability is downstream of the immunity finding? Well, it's our position that although quasi-judicial immunity has been called absolute immunity, there is a rational reason, and it's supported in several bankruptcy court cases, hasn't been directly addressed by this court, I don't believe. I think we agree that the law is a little bit messy in this area. But it's our position that there should be a distinction made between negligence and gross negligence, and maybe we call it qualified quasi-judicial immunity. Oh, that's all we need in this area. But, I mean, I think your friend makes a valid point here that that's kind of confusing in an affirmative defense and an element of the claim in an odd way. Why wouldn't it just work to say, okay, I mean, I think, let me know whether you accept it. I think your friend has said we take the quasi-judicial immunity to be absolute. There's nothing to do here, and I guess I'm not sure why you don't agree with that. Why would you even say, right, quasi-judicial immunity, this case is done. Instead, you seem to agree with the district court to say that now, because of immunity, there's a further inquiry of gross negligence? Yes, and I think that because of the unique nature of the bankruptcy trustees' duties and the functions that they Including fiduciary duties. Including fiduciary duties. That's the problem, right? There's a fiduciary duty there, and so to extend immunity without limitation has been, you know, it's very problematic for us. Our labels for these immunities are very inconsistent and I think confusing. I shared Judge Johnson's concern about putting absolute in front of something and then talking about a limited scope. But if you could go back to his question. If we think about quasi-judicial immunity without tacking absolute on the front of it, then it seems to me that you would advocate for quasi-judicial immunity, and that would be afforded to actions that are not more egregious than negligence. To me, the absolute label is what's messing us up. But we're not talking about absolute immunity. That's Judge Johnson's point. Right. I agree. I think we're talking about an immunity that has a different scope than absolute immunity. And if you look at quasi-judicial immunity, the purposes for that immunity have always been that it protects the integrity of the judicial process and ensures that there can be independent and impartial decisions. But it is absolute. That's stump versus Markman. Yes. It is stump versus Markman. As long as you're a judicial official, then you're entitled to absolute immunity unless you are completely and utterly outside of your jurisdiction. I don't disagree with you. So the question of quasi-judicial immunity, I think, goes to does the quasi attach to judicial or does it attach to immunity? That is, are we talking about quasi-immunity or are we talking about quasi-judicial immunity? Quasi-judicial means that you are acting in the place of a judicial officer, and therefore you are entitled to the immunity that a judicial officer, which would be entitled to, which would be absolute. It's just a fairly narrow category, at least in my view. I think that quasi attaches to both judicial and to immunity. Well, once you do that, you've just blown the whole thing wide open. We recognize this in plenty of post-Castillo cases that there are some actions that trustees take that are going to be entitled to immunity and some that are not, and we trace that back to what bankruptcy judges have traditionally done. Sometimes they're acting in the place, as Judge Bivey suggests, of bankruptcy judges, and sometimes they are not. And the difference for this type of quasi-judicial immunity when they're sometimes acting in the place of a judge is they owe a fiduciary duty. Judges don't. Right, right, right. And I think— Why is your client acting in a quasi-judicial role here in managing these properties? I think that's what you'd have to convince me of. I'm happy to give your client quasi-judicial immunity when she is acting in a quasi-judicial role. I don't see managing the properties as a quasi-judicial role. That's the role of the trustee. And under state law principles, there's a negligent standard there. Well, I understand. I think, again, I can only come back to our position that it's not just managing the properties that's at issue here. It's a discretionary decision that leads to the adjudication of private rights. Ultimately, that's the ultimate act that is at stake here. But would you agree that the top of the decision tree is where Judge Bivey is pointing you to? Because there's sorting of the duties. The trustee does a lot of different things, and some of them may fall into this camp and some of them may not be adjudicatory. Would you agree that the top of the decision tree is to look at the function that's being performed? Yes, Your Honor, I would. I think that's the first step. All right, so I think that's what Judge Bivey is asking you to—is entertaining, that some of these— and he's questioning whether the action in this case really falls into this category at all. And I think you'd agree. If it doesn't, well, it just doesn't, and then the analysis doesn't go any farther. Isn't that right? I agree. But it can't be—I mean the discretionary line is often thrown about in terms of what judicial and quasi-judicial immunity functions to protect. But it can't be that that's the test for whether—for the scope of quasi-judicial immunity. The mismanagement of an estate's funds is both discretionary and certainly affects the rights of the parties because there might be nothing left in the estate due to the mismanagement. But that doesn't make it quasi-judicially immune, does it? Is that the right question you'd have us ask? Well, I think that that question turns on the assumption that this case is about mismanagement of property of the estate. And again, I don't— Well, let's make it a hypothetical then. I mean, that's the test I hear you urging is, okay, well, it's discretionary and it affects the rights of it. But it kind of affects the rights of it incidentally because a right to nothing is not much of a right. But it just doesn't strike me that—in other words, I think you've heard from several of us the question, so what isn't immune then? Aside from, well, what? You've talked about filing things, although, of course, there could be malpractice in those areas. Is anything about the fiduciary duty to manage the estate subject to liability or is it all quasi-judicially immune? Well, I think that there are some acts that perhaps could be called management of the estate that are administrative in nature. But the acts in this case are acts that ultimately are part of that discretionary judgment that a bankruptcy trustee engages in every day and makes the ultimate determination resulting in whether or not the creditors and the debtors, what their rights are to the property. So— Well, that's going pretty far afield of the complaint. I'm looking at the complaint. It's pretty short. It's 13 pages. The main two causes of action, first one being negligence in allowing waste against defendant Goldman owes a fiduciary duty and basically didn't preserve the assets properly. And then the second one is failing to collect and distribute rent from properties. Yes, and they're both alleged to have occurred with gross negligence, which I think is something interesting to note. If the appellant does not believe that gross negligence is a carve-out from the immunity, why did he go to the trouble of alleging gross negligence? And I think that's probably because the bankruptcy courts in this jurisdiction have frequently said that gross negligence is not subject to immunity, but negligence is. And that would be in the continental coin decision. Perhaps my question wasn't clear. I focused on the allegations of the complaint because I'm trying to follow up on your answer as to why this is judicial-like functions instead of more administrative in nature or common law, what the trustees would usually be tasked with the responsibility to do, which is to manage the property. Well, again, I think it comes back to our position that what's alleged to have happened here and what's complained of is an act or acts that led to the harm, to the alleged harm to the creditor, resulting from the ultimate determination that there's nothing to distribute to them. And so I think that there's no way to divorce the particular acts from the ultimate act, as Castillo directs us to do. Then why shouldn't we just determine those questions that are raised in the complaint on the merits? If your client has been negligent, then your client may be subject under California law for breach of fiduciary duty. But if there was no waste of the assets and there was a good reason for not collecting the rent, then the court will say, yeah, there was a good reason for not collecting the rent. This was good business judgment. It was an exercise of discretion. It was not unreasonable. And therefore, there's no liability. Why wouldn't that just be the end of the case without any discussion of quasi-judicial immunity? Well, I think because of this overlay of a breach of fiduciary duty on the absolute judicial immunity concept. These are not judicial decisions. Wasting assets is not an adjudicatory decision. Failing to collect rent is not an adjudicatory decision. These are decisions that can be made by ordinary business people all the time who do not have law degrees and have no intention of going to law school. But in the bankruptcy context, those decisions are made in the context of rules that say whether or not to collect rent is a discretionary decision that the bankruptcy trustee has to make and has to make that in terms of whether or not a meaningful distribution to creditors will result. Because there's a cost-benefit analysis because it's part of the business judgment rule because sometimes it doesn't make sense to go after the rents, right? That seems to me what you're not saying that Judge Bybee has baked into his question. That's partly correct. Am I understanding you correctly? It's not just a business judgment. Appreciate that it's not just a business judgment. It results in an adjudication of the private rights. And that's the function test that we know applies as a result of Antoine and was applied in Castillo. But I guess, Ms. McIntyre, I don't see that in the district court's order. And so I think in Castillo, we devoted several pages to just the question of whether quasi-judicial immunity applied to scheduling and noticing the bankruptcy hearing. The district court, there's nothing like that in the district court's order. So how are we to know what the – I think a lot of the questions here are about how Castillo should apply to the conduct alleged in bankruptcy court. But we don't have much to go on. And so, I mean, don't we need to see a little bit more or do that ourselves to figure out the answer? I mean doesn't Castillo demand more than what the district court provided here? I don't – I'm not sure if I'm getting the gist of your question, but I think my answer would be no. That what the district court looked at was whether or not there was an adjudicatory act that resulted in determination of the party's rights. And the district court said we find that this was – that this qualifies as – that conduct of the bankruptcy trustee constitutes qualified – qualifies for qualified – Or quasi-judicial. Quasi-judicial immunity. So, I mean, it seems to be a pretty broad line there then, right? So to take it – if that's what we take the rule to be, then going back to Judge Nguyen's question about the allegations at issue here and Judge Bivey's concerns, I think is any alleged waste or mismanagement of the property by a trustee is going to be subject to quasi-judicial immunity. There's no attempt to parse between particular actions that were being done that Antoine and Castillo seems to require us to do. It's all immune. Yeah, I just don't think that additional information or facts is necessary for the court to make the determination, understanding that you're operating in the context of a bankruptcy trustee, not a private trustee, and you're operating under the bankruptcy code, which requires trustees to perform certain actions. Well, fair. I mean, that's all very – but again, in Castillo, we even distinguish between the scheduling of hearings and the giving of notice of hearings. And so we think that difference in functions was important under Antoine. But all alleged mismanagement of assets under a trustee's control, it's all quasi-judicial? That doesn't seem necessarily – I guess it seems like we need to go down the road a little bit more to apply Antoine, to be faithful to Antoine, and that's what we did in Castillo. Well, in Castillo, in distinguishing or addressing the fact that there was a scheduling decision made and a notice that wasn't given, the court looked at both of those as one act and found that quasi-judicial immunity applied to both of those acts. Here, I think you can look at the allegations of the complaint, which state that certain conduct was engaged in, and go beyond that in looking at the context of the case as a bankruptcy case and saying that those kinds of decisions are made by bankruptcy trustees as a part of their ultimate determination of the party's rights. On this point, I understand you to be treating the category of what's adjudicatory as fairly broad, given that it rolls up into an ultimate distribution. What authorities, case authorities, would you direct us to as best supporting the breadth of this category of decisions as adjudicatory? I think that I would point you to – sorry, my notes here. Well, going all the way back to Antoine, I would say that that case talks about authoritatively adjudicating private rights, and that's the touchstone, and that was reaffirmed by this circuit, the vitality of that case in the Gay v. Parsons decision, a 2023 decision, 61 F. 4th, 1088. I would also point to the language in the report of no distribution that says that the trustee has made a determination that there are no assets to distribute to the creditors, therefore the case can be closed. Absent objection, and this is a crucial part of the bankruptcy process that occurs on a regular basis, and that language in the report of no distribution itself reflects that there's a determination made by the trustee, and that includes the decision whether to collect rent or not collect rent, and the decision whether to undertake some kind of improvements to the real property that was fully secure. Let me ask you a follow-up question to that, Counsel, just because I just need some clarification in my mind. So it's my understanding that the bankruptcy court authorized the abandonments, correct, in July of 2021? That's correct, Your Honor. Okay, so how is it that Harris doesn't come into play? If the court said, yeah, it's okay, I'm giving you permission, I agree with you, how does that not give them derivative immunity, or does it? I think it should. I think that the fact that that notice of abandonment was approved by court order after full disclosure does give this case the imprimatur that you need for a Harris-type situation. So which case is controlling here? What analysis is controlling? Is it Harris or is it Castillo? Well, I think it's both. I mean, I think that under Harris you can look at that second order. I know that my colleague across the aisle here will have some arguments why we shouldn't consider that report of no distribution. So alternatively, I think under Castillo we can say that there was sufficient discretion exercise that would qualify for immunity here. Can I ask one last question? Yes. I think that you alluded to earlier on your going back to your point about gross negligence and that it's going to have to be something more than negligence. I think you acknowledged perhaps earlier that we would have to overrule Cochise, our decision in that case, to adopt that rule. Do you agree with that? I think Judge Bress was asking about that. I think that Cochise is distinguishable. I'm not sure that it has to be overruled. Cochise involved fiduciary duties owed to third-party creditors. Just because we're over time, I'll just ask it this way a little bit more broadly. Do you think that there's any precedent that we currently have that we have to overrule to get to the position that you're advocating today? No, Your Honor. I think that there is no existing Ninth Circuit precedent that has to be overruled under my analysis. And I think that there is ample authority in the bankruptcy courts that talk about making this distinction between negligence and gross negligence that support what the district court did. None of those are from us. No, agreed. They're not binding, but I think they have very persuasive reasoning and can certainly be considered by this court and should be followed. So in conclusion, because I know that I'm over time, I would request that this court affirm the district court's remand and allow this case to be processed in accordance with the district court's order. Thank you. Thank you, Your Honors. Mr. Jacob, you have a minute and four seconds. I am your minute man. Here, there was a question about R&D, the report of no distribution. It was not accepted. Excuse me. There was an objection. There's a case from this court called In Ray Lee that says the form of the objection doesn't really matter. Where was the objection? Where did we find that? The attack, the Homestead exemption was attacked. All the premises of the R&D were attacked. In fact, the debtor. Can you just show me in the record? Where do I look? There is a listing of the events in the bankruptcy court. There was an attack on the report's assertion of what the exemptions would be. The debtor himself amended his schedules to add additional property, and there was nothing heard from the bankruptcy trustee again. I know you don't have a lot of time, but if you could tell me where there was an objection to the R&D. It takes the form of an objection to the Homestead exemption. All right. Thank you. And also the amended schedules by the debtor himself. That's not an objection. I'm trying to figure out. It's not from the debtor. I'm asking for an objection to the R&D. Okay. The R&D came out four days later. We objected because we didn't see the numbers. You objected in the form of? Well, under the In Ray Lee case, the form is not critical here. I appreciate this citation. And what you're pointing to, without regard to form, is the Homestead? Or what are you pointing to? The R&D states what the assets are, what the exemptions are, et cetera. I'm just looking for the objection, sir. Where do I find that in the record? The Goldman filed supplemental exit. What were titled supplemental exits of record includes the bankruptcy docket. I think you're talking about June 26th of 2011 or something like that. So she files her R&D, and, like, four days later we file that objection. Okay. And then about August, it might be number 35, if I can remember this. It's strange enough that the debtor finally comes and says, oh, I've got this extra money on the side. So he himself says. Okay, but the objection you want me to look at is something filed four days after the R&D. Is that it? Well, that was one objection. All right. And what I. . . If you want to make one concluding statement right now, you should do so. Okay. This is. . . The Supreme Court has said something about Orwellian use of non-proton orders. And after the harm is done, I don't think. . . I don't really know whether you can go back and say that the abandonment. . . Well, I addressed that really thoroughly somewhere. I would say look at the joint. . . The motion for judicial notice to see all the strange arguments that were made in terms of business decision makings. In particular, one for a turnover order. The judge. . . The bankruptcy judge actually did not. . . Actually sent the trustee back to the drawing board because she was refusing to collect rents saying, oh, we've got this business decision. It will be too expensive to collect it. And the Chapter 7 handbook for trustees says, no, you send out a turnover order. Most people will comply immediately. And that's what happened. Thank you. Thank you. Thank you. The case of Kevin Harry Gilman, Tammy Phillips v. Amy Goldman is now submitted. Mr. Jacob, Ms. McIntyre, thank you for your presentations here today. Thank you. We are adjourned. All rise.
judges: MURGUIA, GOULD, RAWLINSON, BYBEE, CHRISTEN, NGUYEN, OWENS, BRESS, FORREST, JOHNSTONE, ALBA